UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCHNEIDER NATIONAL LEASING, INC.,

    Plaintiff and Counterclaim Defendant,

v.                                                                          Case No. 17-C-672

UNITED STATES OF AMERICA,

    Defendant and Counterclaim Plaintiff.

---

**ORDER GRANTING-IN-PART AND DENYING-IN-PART
UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the court on the United States' motion for partial summary judgment. On May 12, 2017, Schneider National Leasing, Inc. (Schneider Leasing), a Nevada corporation and wholly owned subsidiary of Schneider National, Inc. (Schneider) with its principal place of business located in Green Bay, Wisconsin, brought this action against the United States after the Internal Revenue Service (IRS) denied Schneider Leasing's November 2016 claim for refund seeking the recovery of $157,683.64 in federal excise taxes paid in 2016 and the abatement of the remainder of the taxes and interest assessed against it in July of 2016. On August 16, 2017, the United States filed a counterclaim seeking to reduce the unpaid balance of the July 2016 assessments against Schneider Leasing, plus interest and costs, to judgment. The court has jurisdiction over Schneider Leasing's claim pursuant to I.R.C. § 7422 and 28 U.S.C. § 1346(a)(1), and over the United States' counterclaim pursuant to I.R.C. § 7402, 28 U.S.C. § 1340, and 28 U.S.C. § 1345. For the reasons that follow, the motion will be granted-in-part and denied-in-part.

**BACKGROUND**

Schneider Leasing's business is centered around the leasing of truck tractors and trailers to Schneider. The tax periods at issue in this action are 12 quarterly periods beginning with the quarter ending March 31, 2011, and ending with the quarter ending December 31, 2013. During these tax periods, Schneider Leasing arranged for 982 of its truck tractors to undergo what it describes as a refurbishment process. Schneider Leasing referred to these truck tractors as donor tractors, and had previously paid federal excise taxes under I.R.C. § 4051 on its purchase of the donor tractors.

Schneider Leasing also purchased 982 glider kits in connection with the refurbishment process and did not pay federal excise taxes under I.R.C. § 4051 on its purchase of the glider kits. The glider kits Schneider Leasing purchased contained new or re-manufactured parts for Freightliner Columbia tractors. Each glider kit purchased by Schneider Leasing included, at a minimum, a cab, chassis, radiator, front axle, front suspension, front wheels, front brakes, brake system, and trailer connections. Of the glider kits purchased by Schneider Leasing, 912 were "powered" glider kits that also included a re-manufactured engine, and 70 were "non-powered" glider kits that did not include an engine. As part of the refurbishment process, Schneider Leasing arranged for transportation of both the donor tractors and the glider kits to outfitter facilities where the outfitters' employees performed certain physical work on them. Schneider Leasing then leased the 982 refurbished tractors to affiliates of Schneider under long-term leases within the meaning of I.R.C. § 4052(e). All of the 982 refurbished tractors were of the kind chiefly used for highway transportation in combination with a trailer or semitrailer and did not qualify for the tax exclusion in I.R.C. § 4051(a)(4).

Schneider Leasing is obligated to file IRS Form 720, Quarterly Federal Excise Tax Return, on a quarterly basis to report, among other things, any federal excise taxes due under I.R.C. § 4051. During the relevant tax periods, Schneider Leasing did not report or pay taxes for the 982 refurbished tractors because it determined that it did not owe any federal excise taxes under I.R.C. § 4051. On July 25, 2016, after concluding its excise tax examination, the IRS assessed additional I.R.C. § 4051 excise taxes of $9,387,403.73, plus interest, against Schneider Leasing with respect to 976 of the 982 refurbished tractors. On August 4, 2016, Schneider Leasing paid the assessed additional excise tax and interest for 12 of the 976 refurbished tractors—one for each of the tax periods at issue.

In November of 2016, Schneider Leasing filed with the IRS a claim for refund of $157,683.64—the amount of tax and interest it paid on August 4, 2016. On December 28, 2016, the IRS denied Schneider Leasing's claim for refund. Schneider Leasing then proceeded to timely file this action on May 12, 2017, seeking the recovery of the excise tax and interest that it paid on August 4, 2016, and the abatement of the remainder of the July 25, 2016 assessments of taxes and interest against it. The United States timely filed its counterclaim on August 16, 2017, seeking to have the unpaid balance of the July 25, 2016 assessment, plus interest and costs, reduced to judgment.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on

3

those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The focal point of this case is the interpretation and application of I.R.C. § 4052(f), which states

> [a]n article described in section 4051(a)(1) shall not be treated as manufactured or produced solely by reason of repairs or modifications to the article (including any modification which changes the transportation function of the article or restores a wrecked article to a functional condition) if the cost of such repairs and modifications does not exceed 75 percent of the retail price of a comparable new article.

26 U.S.C. § 4052(f). The United States contends that § 4052(f) does not apply to the 912 donor tractors that were refurbished utilizing powered glider kits because no articles were repaired or modified within the meaning of I.R.C. § 4052(f). Even if § 4052(f) were to apply to those 912 tractors, the United States contends that, at least for some of those tractors, the cost of any repairs

4

and modifications exceeded 75 percent of the retail price of a comparable new article, thus rendering them subject to the I.R.C. § 4051 excise tax upon use or leasing by Schneider Leasing. Regarding the 70 donor tractors that were refurbished utilizing non-powered glider kits, the United States' position is that for 64 of those tractors the cost of repairs and modifications exceeded 75 percent, similarly rendering them subject to the § 4051 excise tax. Schneider Leasing, relying on Revenue Ruling 91-27, contends that the refurbishment process constitutes a "repair" or "modification" of each donor tractor within the meaning of I.R.C. § 4052(f) and that the repairs and modifications to the donor tractors cannot be treated as manufacturing or producing new tractors because the cost of such repairs and modifications did not exceed 75 percent of the retail price of a comparable new article.

In its motion for partial summary judgment, the United States asks the court to resolve three questions regarding the interpretation of I.R.C. § 4052(f):

> 1) Does the "retail price of a comparable new article" exclude any federal excise taxes imposed under I.R.C. § 4051?
>
> 2) Does the "retail price of a comparable new article" exclude any freight or delivery charges paid to transport the article to a bona fide purchaser?
>
> 3) Does the "cost of such repairs and modifications" to an article include freight or delivery charges paid to transport the article and any new parts to the place of repair or modification?

Pl.'s Br., Dkt No. 19 at 9–10.

**A. Whether the "Retail Price of a Comparable New Article" Excludes Any Federal Excise Taxes Imposed Under I.R.C. § 4051**

Whether certain articles identified in I.R.C. § 4051(1)—including "[t]ractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer"—shall be

treated as "manufactured or produced solely by reason of repairs or modifications to the article" depends on whether the cost of such repairs and modifications "exceed 75 percent of the retail price of a comparable new article." I.R.C. § 4052(f)(1). The parties dispute what should and should not be counted when ascertaining the "retail price of a comparable new article."

"When attempting to decipher the proper interpretation of a statute, we begin by determining 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648–49 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "When interpreting statutory language, the meaning attributed to a phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Id.* at 649 (quoting *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011)). "If we find that the language in a statute is unambiguous, we will not conduct further inquiry into its meaning and enforce the statute in accordance with its plain meaning." *Id.*

Relevant to the court's analysis are two other provisions: § 4052(a) and § 4052(b). Section 4052(a)(1) defines "first retail sale" as "the first sale, for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." § 4052(a)(1). This shows that, as contemplated by Congress in enacting the statute, retail relates to the buyer's purpose, i.e., not for the purpose of resale or long-term leasing. Section 4052(b) states that "[i]n determining price for purposes of this subchapter," "the amount of the tax imposed by this subchapter" shall be excluded. § 4052(b)(1)(B)(i). The subchapter referenced consists of I.R.C. §§ 4051–4053. *See* United States Code, Title 26, Subtitle D, Chapter 31, Subchapter C. Section 4052(b)'s definition

6

of price implies that the definition applies broadly—not just to this section, but the entire subchapter.

Viewed in the context of the statute as a whole, it is apparent that "retail price" excludes any federal excise taxes imposed under I.R.C. § 4051. Nothing in the language of the statute suggests that the meaning of "price" in "retail price of a comparable new article" is different than the definition of "price" set forth in § 4052(b). Rather, "retail" just qualifies the purpose for which the price is being set. *See Oshkosh Truck Corp. v. United States*, 123 F.3d 1477, 1480 (Fed. Cir. 1997) ("When a manufacturer sells directly to the end-user, i.e. at a retail sale, the price at which it sells is the 'retail price' as that is the price at which these items are being sold in the marketplace."); *see also* Rev. Rul. 91-27, 1991-1 C.B. 192 (1991) ("Section 4052(a)(1) of the Code defines the term 'first retail sale' as the first sale for a purpose other than resale or leasing in a long term lease, after production, manufacture, or importation."). The use of "retail" in § 4052(f) is to identify the type of "price" that should be used in that provision's comparative analysis so that another type of price, such as wholesale, is not used.

If Congress intended for "retail price" to not exclude "the amount of the tax imposed by this subchapter," § 4052(b)(1)(A), it could have expressly stated as much when it enacted § 4052(f). Congress has previously amended the definition of price: it excluded a specific provision of § 4052(b)—the provision defining "price" for the subchapter—when determining the price for purposes of long-term leases. Highway Revenue Act of 1987, Pub. L. No. 100-17, §§ 505(b), 506(a), 101 Stat. 132 (adding § 4052(b)(4) and 4052(b)(3) which states, in part, "the price (determined under this subchapter but without regard to paragraph (4))"). Congress also repealed an exclusion from the definition of "price" for the fair market value at retail of tires in the same

legislation that created § 4052(f). Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1402(b), 111 Stat. 788 (striking clause (iii) which excluded "the fair market value (including any tax imposed by section 4071) at retail of any tires (not including any metal rim or rim base)" when determining price for purposes of the subchapter). Thus, Congress knows how to amend the definition of "price" and is aware that the definition applies to the entire subchapter, including § 4052(f).

In addition, although not binding or precedential in effect, IRS CCA 201306019 further supports that § 4051 excise taxes should be excluded from the retail price. In response to one of the questions presented regarding the application of § 4051(f), hypothetical costs of repairs and modifications ($95,000) are compared to a hypothetical retail price ($125,000). 2013 WL 474552. Notably, the retail price is identified as the pre-tax price. Because $95,000 is more than 75 percent of $125,000, it is determined that § 4052(f) does not apply.[1]

Based on the foregoing analysis, the court holds that the "retail price of a comparable new article" in § 4052(f) excludes any federal excise taxes imposed under I.R.C. § 4051.

**B. Whether the "Retail Price of a Comparable New Article" Excludes Any Freight or Delivery Charges Paid to Transport the Article to a Bona Fide Purchaser**

The parties also dispute whether the "retail price of a comparable new article" in § 4052(f) excludes any freight or delivery charges paid to transport the article to a bona fide purchaser. Section 4052(b), in addition to defining what will be excluded when determining price for purposes of the subchapter, also states what will be included. "[A]ny charge incident to placing the article in condition ready for use" shall be included when determining price for the purposes of the

---

[1] Although IRS CCA 201306019 states "[t]herefore, § 4051(f) does not apply" instead of § 4052(f), this appears to be a typo. There is no section § 4051(f) and the question being answered references §4052(f).

8

subchapter. I.R.C. § 4052(b)(1)(A). In 1983, the Treasury Department promulgated a temporary regulation interpreting the definition of price in § 4052(b), T.D. 7882, 48 Fed. Reg. 14361-02, 14371 (Apr. 4, 1983), which is codified at Treas. Reg. § 145.4052-1. The relevant part states:

> (d) Determination of price—(1) In general. The price for which an article is sold includes the total consideration paid for the article whether that consideration is paid in money, services, or other forms. In addition, there shall be included any charge incident to placing the article in condition ready for use. *Similar rules to section 4216(a) and the regulations thereunder, relating to charges to be included in the price and excluded from the price, shall apply. For example, charges for transportation, delivery, insurance, and installation (other than installation charges to which section 4051(b) applies), and other expenses actually incurred in connection with the delivery of an article to a purchaser pursuant to a bona fide sale shall be excluded from the price in computing the tax.*

26 C.F.R. § 145.4052-1(d)(1) (emphasis added). Section 4216(a), referenced in the above quoted regulation, similarly excludes transportation costs: "[a] transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Secretary in accordance with the regulations." I.R.C. § 4216(a). Because Treas. Reg. § 145.4052-1 states that charges for transportation and delivery are to be excluded from § 4052(b)'s definition of price, and, as the court held in Section A, § 4052(b)'s definition of price applies to § 4052(f), the court holds that charges for transportation and delivery are excluded from "the retail price of a comparable new article" under § 4052(f).

**C.  Whether the "Cost of Such Repairs and Modifications" to an Article Include Freight or Delivery Charges Paid to Transport the Article and Any New Parts to the Place of Repair or Modification**

Section 4052(f) states that "[a]n article described in section 4051(a)(1) shall not be treated as manufactured or produced solely by reason of repairs or modifications to the article . . . if the cost

9

of such repairs and modifications do not exceed 75 percent of the retail price of a comparable new article." The parties dispute whether "the cost of such repairs and modifications" includes delivery charges associated with the transportation of the article and any new parts to the place of repair or modification. The United States contends that, because completing the repairs and modifications are not possible unless the donor tractors and glider kits are not physically present at the outfitter's shop, the costs of shipping should be included because transportation of the donor tractors and glider kits is integral to the repair and modification process. Schneider Leasing asserts that the act of shipping or transporting a donor tractor or glider kit alone is not an act that repairs or modifies the donor tractor, and should not be included when calculating the costs. As to this issue, the court agrees with Schneider Leasing.

The focus of § 4052(f) is on the costs of repairs or modifications *to* the article, and the act of transporting the donor tractors and the glider kits alone does not repair or modify the donor tractor. While true that here the transportation was a part of Schneider Leasing's refurbishment process, the focus of the statute is not on the costs of the repair or modification process, but solely the repairs or modifications that are done to the article—the donor tractors. The Senate Amendment in the Conference Committee Report of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA) supports this interpretation of § 4052(f). The Senate Amendment in TAMRA adopted the 75-percent safe harbor that was then adopted by the IRS in Revenue Ruling 91-27 in 1991 and later codified in the Internal Revenue Code as § 4052(f) in 1997. The Senate Amendment stated "[i]n applying this section, the costs of non-emergency repairs, modifications, or upgrades to a vehicle over any 6-month period are to be aggregated in determining whether the 75 percent test is met." H.R. Conf. Rep. No. 1104, 100th Cong., 2d Sess. 1, 178 (1988), 1988-3 C.B. 668. This

language focuses on actions done to the vehicle itself, rather than on the steps taken to prepare the vehicle for those actions to be taken. As a result, the court holds that the freight or delivery charges paid to transport an article or parts provided by the owner of the article are to be excluded when calculating the costs of repairs and modifications for purposes of § 4052(f).

## CONCLUSION

For the foregoing reasons, Defendant and Counterclaim Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 18) is **GRANTED** with respect to the exclusion of federal excise taxes imposed under I.R.C. § 4051 and freight or delivery charges from the retail price of a comparable new article. The motion is **DENIED** with respect to freight and delivery charges being included when calculating the costs of repairs and modifications. The Clerk is directed to set this matter for telephone conference to discuss further scheduling.

**SO ORDERED** this  23rd  day of July, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court